UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DEBRA CHARNOCK,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL[1],<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | CASE NO. 3:18CV329<br><br>MAGISTRATE JUDGE<br>GEORGE J. LIMBERT<br><br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff Debra Charnock ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. In her brief on the merits, filed on July 5, 2018, Plaintiff asserts that the administrative law judge ("ALJ"): (1) failed to fully develop the record because he did not properly consider the impact of her obesity; (2) failed to fully develop the record and took very limited testimony that created evidentiary gaps that prejudiced her concerning her mental impairments; and (3) failed to properly evaluate and credit her complaints of disabling pain and limitations. ECF Dkt. #17. Defendant filed a merits brief on August 6, 2018, and Plaintiff filed a reply brief on August 14, 2018. ECF Dkt. #s 18, 19.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on March 25, 2015, alleging disability beginning on December 1, 2008 due to pain in her knees, feet, wrists, hands, and low back, and

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

to her depression. ECF Dkt. #14 ("Tr.") at 156-159, 177.[2] This claim was denied initially and upon reconsideration. *Id.* at 67-86, 92-106. Following the denial, Plaintiff requested a hearing before an ALJ, which was held on September 8, 2016. *Id.* at 27, 107. During the hearing, Plaintiff, through counsel, moved to amend her alleged onset date and she thereafter filed a motion to amend her alleged onset date from December 1, 2008 to October 6, 2009. *Id*. at 32, 169. On December 13, 2016, the ALJ issued a decision and denied Plaintiff's application for DIB. *Id.* at 22. Subsequently, the Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 11, 2017. *Id.* at 1-4.

On February 11, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on July 5, 2018. ECF Dkt. #17. Defendant filed a merits brief on August 6, 2018. ECF Dkt. #18. Plaintiff filed a reply brief on August 14, 2018. ECF Dkt. #19.

## II.    SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In his December 13, 2016 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 6, 2009, her alleged onset date, through her date last insured of December 31, 2013. Tr. at 12. The ALJ determined that Plaintiff had the following severe impairments: asthma; a history of right posterior tibial tendon dysfunction; a history of right valgus deformity; status post right ankle surgery; bilateral knee osteoarthritis; lumbar degenerative disc disease ("DDD"); and lumbago. *Id.* at 12-13. The ALJ found that the following of Plaintiff's impairments to be non-severe: obesity; depression; anxiety; hyperglycemia; espohagitis; gastroesophageal reflux disease; allergic rhinitis; urinary incontinence; systolic ejection murmur; bronchitis; peripheral edema; hypoglycemia; hyperlipidemia; and history of cyst on the right wrist. *Id.* at 13. Continuing, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 14-15.

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except that she: could occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; could frequently balance, stoop, kneel, crouch, or crawl; could never work around hazards such as unprotected heights or moving mechanical parts; and she could occasionally work in: conditions of humidity and wetness; around concentrated dust, odors, fumes, or other pulmonary irritants; in extreme cold and extreme heat, and in conditions where there are vibrations. Tr. at 15. The ALJ discounted Plaintiff's complaints of pain and severe limitations and determined that she was capable of performing her past relevant work as a cashier. *Id.* at 17-19, 21. In conclusion, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 6, 2009 through December 13, 2013. *Id.* at 21.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)) (internal citations omitted).

## V. ANALYSIS

### A. Full and Fair Development of the Record

Plaintiff asserts that the ALJ failed to fully and fairly develop the record in her case because he failed to consider the impact of her obesity on her ability to function and he took very limited testimony which resulted in evidentiary gaps in the record concerning her mental conditions. ECF Dkt. #17 at 13-17.

#### 1. Obesity

Plaintiff contends that the ALJ found her obesity to be a non-severe impairment at Step Two, but provided no rationale for this conclusion. ECF Dkt. #17 at 13. She points out that the ALJ never mentioned her weight in his decision and he made no other reference to her obesity besides finding it to be non-severe. *Id*. She asserts that the ALJ violated Social Security Ruling ("SSR") 02-1p by not addressing the impact of her obesity on her other impairments as the SSR requires the ALJ to consider any additional and cumulative effects of obesity and the ALJ did not do so in this case. *Id*. She contends that the ALJ found that the intensity and limiting effects of her knee and ankle impairments were not supported by the record without taking into account the impact her obesity had on those impairments. *Id.* She also notes that the SSR indicates that obesity can impact depression. *Id*. Plaintiff further maintains that the ALJ violated SSR 96-8p by failing to consider her obesity impairment, severe or non-severe, when he determined her RFC. *Id.* at 15.

The Court first notes that Plaintiff did not allege obesity as a basis for disability in her DIB application. Tr. at 177, 187, 198. Nor did Plaintiff mention obesity at the ALJ hearing when Plaintiff was asked about the conditions that stopped and prevented her from working. *Id.* at 41-56. It is the claimant, not the ALJ, who has the burden to produce evidence in support of a disability claim. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x. 456, 459 (6th Cir.2008) (citing 20 C.F.R. § 404.1512(a)); *Landsaw v. Sec'y. of Health & Human Servs*., 803 F.2d 211, 214 (6th Cir.1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416.912, 416.913(d).

Further, an ALJ has a special, heightened duty to develop the record only when a claimant is "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson*, 280 Fed. App'x. at 459 (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir.1983)). Plaintiff in this case was represented by counsel at the hearing. *Id*. at 27. However, neither she nor her counsel mentioned obesity at the hearing as an impairment or as a condition impacting Plaintiff's other impairments.

Plaintiff is correct that SSR 02-1p recognizes that obesity can be a severe impairment that limits a claimant's abilities to perform exertional functions and it can impact mental impairments such as depression. SSR 02-1p states that, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." SSR 02-1p. However, the SSR does not require a specific mode of analysis by an ALJ and it does not establish that obesity is a severe impairment or that impact that it has on functional limitations. *See Bledsoe v. Barnhart*, 165 Fed. App'x 408, 412 (6th Cir. 2006). SSR 02-1p directs an ALJ to consider a claimant's obesity in combination with her other impairments throughout the sequential analysis. *Miller v. Comm'r,* 811 F.3d 825, 835 (6th Cir. 2016). Significantly in this case, "[a]n ALJ satisfies the SSR's requirement to consider a claimant's obesity when the ALJ credits RFCs from physicians who accounted for the claimant's obesity." *Foss v. Comm'r*, No. 1:16CV1907, 2017 WL 2912524, at *7 (N.D. Ohio June 20, 2017) citing *Miller*, 811 F.3d at 835 (citing *Coldiron v. Comm'r*, No. 09-4071, 2010 WL 3199693, at *8 (6th Cir. Aug. 12, 2010)).

In the instant case, as in *Foss*, the ALJ indicated in his decision that he assigned great weight and relied upon the opinions of the state agency reviewing physicians who both indicated in those opinions that Plaintiff's height was 65 inches and her weight was 200 pounds. Tr. at 20, citing Tr. at 67-75. Both of the agency physicians also cited to 2011-2013 examinations by Plaintiff's pain management physician, Dr. Shah, in which he documented Plaintiff's BMI at 37. *Id*. at 73, 84. The agency physicians restricted Plaintiff to light work with the ability to frequently climb ramps and stairs, occasionally climb ladders, ropes and scaffolds, occasionally

-6-

stoop, kneel, crouch and crawl, and unlimited balancing. In formulating her RFC, the ALJ specifically stated in his decision that he considered the limiting effects of all of Plaintiff's impairments, "even those that are non-severe," in determining her RFC. *Id.* at 13. He then incorporated into his RFC for Plaintiff some of the limitations by the agency reviewing physicians, such as lifting and carrying, and her abilities to frequently climb ramps and stairs. Id. at 73, 83. Further, the ALJ limited Plaintiff's abilities to climb ladders, ropes and scaffolds even more so than did the agency physicians, as they opined that she could climb ladders, ropes and scaffolds occasionally, while the ALJ determined that she could never climb ladders, ropes and scaffolds. *Id.* at 15, 73, 83. Although the ALJ did not adopt the stooping, kneeling, crouching and crawling limitations opined by the agency physicians, as he found that she could frequently perform these activities while they opined that she could only occasionally perform them, he determined that Plaintiff had environmental limitations that the agency physicians did not opine, such as never working around unprotected heights or moving mechanical parts, only occasional work in humidity and wetness, or around concentrated dust, fumes, and pulmonary irritants, and in extreme cold, extreme heat and places where there are vibrations. *Id*. Based upon the ALJ specific indication that he considered Plaintiff's non-severe impairments, which included her obesity, and his reliance upon and incorporation of some of the findings of the agency reviewing physicians who had specifically considered Plaintiff's obesity, and opined limitations as a result, the Court finds that the ALJ considered Plaintiff's obesity as required by SSR 02-1p.

### 2. **Mental Impairments**

Plaintiff also asserts that the ALJ failed to adequately develop the record with regard to her mental impairments and failed to adequately account for these limitations in his RFC for her. ECF Dkt. #17 at 15; ECF Dkt. #19 at 8-10. She argues that the ALJ's questioning at the hearing was inadequate and incomplete because he saw that she was nervous and he failed to follow-up or explore further the impact of her anxiety and depression on her ability to work. *Id*. Plaintiff contends that the ALJ knew that there were gaps in the evidence concerning her daily living activities, social limitations, and problems with concentration, persistence or pace, as he

acknowledged as much at the hearing, but he failed to cure the deficiencies and he then improperly concluded that Plaintiff had failed to establish how her anxiety and depression impacted her functioning. ECF Dkt. #17 at 15-16.

Again, the Court notes that Plaintiff was represented by counsel at the hearing, and therefore, the ALJ was under no special, heightened duty to develop the record. *Trandafir v. Comm'r*, 58 Fed. App'x 113, 115 (6th Cir. 2003). The "burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw,* 803 F.2d at 214. At the ALJ hearing, when asked what prevented her from working, Plaintiff responded that she was not able to stand on her feet for a very long time due to pain in her ankles, back pain, carpal tunnel syndrome, and asthma. *Id*. at 40-49. It was not until the following questioning by the ALJ when Plaintiff discussed her anxiety and depression:

> Q (ALJ): Any other problems or symptoms for the period we're focusing on at all? Any mental issues, for example?
>
> A (Claimant): Yeah. I'm very - - yeah.
>
> Q: And again, we're focusing on '09 to 2013. Were you being treated for any mental problems during that time?
>
> A: Just medication.
>
> Q: And who was prescribing that?
>
> A: Dr. Shah - - Dr. Kuns.
>
> Q: All right. And that was for what exactly?
>
> A: I guess anxiety.
>
> Q: All right. And what kind of anxiety were you experiencing during that period of time?
>
> A: Well, I get anxiety attacks, I guess you would say.
>
> Q: So tell me about that. What would happen, how long would it last, how often would it happen?
>
> A: Oh, times like now when I get - - don't - -
>
> Q: Well, again, we're focusing on '09 to 2013, if you can recall what was going on then with regard to depression or anxiety.

| | |
|---|---|
| A: | Well, I've lost three of my brothers and both parents in that time, that kind of depressed me a bit. |
| Q: | So what were your limitations? |
| A: | I'm not sure. I don't know what you're asking, I guess. |
| Q: | I'm giving you a chance to try to explain how that impacted your ability to work during that time. What kind of limitations did you experience from depression or anxiety during the time we're focusing on? |
| A: | I don't know. I don't understand. |
| Q: | Okay. You're telling me that during the time we're focusing on you were suffering from depression and anxiety, right? |
| A: | Right. |
| Q: | Okay. All I'm asking is if you can remember during that four-year period or so what exactly did you experience and how it impacted on your ability to work. |
| A: | Just anxiety, I guess. I don't know. I don't know |
| Q: | Okay. |
| A: | Other than medication I don't know what to say. |
| Q: | All right. One other thing - - |
| A: | I'm not sure what you're asking. |

Tr. at 48-50. Plaintiff's counsel did not follow up on Plaintiff's mental health conditions or otherwise seek to add to the record concerning Plaintiff's mental impairments, their severity, or their limiting effects at the hearing. In fact, he did not follow up on this line of questioning or ask any questions relating to Plaintiff's anxiety or depression at the hearing at all. With the burden on Plaintiff, and her representation by counsel at the hearing, the ALJ adequately fulfilled his obligation of developing the record as to Plaintiff's mental health conditions. Accordingly, the Court finds that the ALJ did not err or fail to fully and fairly develop the record concerning Plaintiff's anxiety and depression.

In addition, while Plaintiff suggests that a consultative examination or medical expert should have been called by the ALJ, an ALJ is not required to make such requests unless the record shows that this is "necessary to enable the administrative law judge to make the disability

-9-

decision." Here, the ALJ used the special technique in effect at the time[3] for determining whether Plaintiff's mental impairments were severe. He found that Plaintiff's anxiety and depression were not severe as they did not cause more than minimal limitations in her ability to perform basic mental work activities. Tr. at 13. He explained that he used the four broad functional areas set forth in the disability regulations for evaluating mental disorders as set forth in Listing 12.00C of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. The ALJ found that Plaintiff had only mild limitations in each of first three functional domain areas of daily living activities, social functioning and concentration, persistence or pace due to her anxiety and depression. *Id*. at 13-14. In so concluding, the ALJ indicated that little discussion was had about her mental health symptoms in the medical record and Plaintiff did not discuss at the hearing the limitations that resulted from her anxiety and depression. *Id.* Nevertheless, the ALJ noted that Plaintiff testified at the hearing that she experienced anxiety attacks and symptoms of depression, she received treatment from her primary care physician, she regularly spent time with her family and helped watch her grandchild, and she had a relative lack of treatment for her mental health conditions. *Id.*

The ALJ concluded that Plaintiff's mental health impairments were not severe because they caused no more than "mild" limitations in any of the first three functional areas and caused no episodes of decompensation or deterioration of extended duration for the fourth functional area. Tr. at 14. He further acknowledged that the limitations in this Step Two non-severity analysis were not a RFC assessment as the Steps Four and Five RFC analyses required a more detailed assessment. *Id*. In assessing the medical record at Steps Four and Five, the ALJ highlighted the agency reviewing psychologists' findings that Plaintiff had a history of treatment for her anxiety with her primary care physician, but they found insufficient evidence to assess the presence of mental impairments and any functional information for the time frame adjudicated. *Id.* at 20, citing Tr. at 71-73, 80-82. The ALJ also cited to the treatment records of

---

[3] As Defendant points out, the Commissioner revised the four broad functional areas that are considered in 20 C.F.R. § 404.1520a, effective January 17, 2017, which was after the ALJ's decision in this case. ECF Dkt. #18 at 10, n. 4, citing Revised Criteria for Evaluating Mental Disorders, 81 FR 66137, available at https://www federalregister.gov/ documents/2016/09/26/2016-22908/revised-medical-criteria-for-evaluating-mental-disorders (published 9/26/16).

Dr. Kuns, Plaintiff's primary care physician, who treated her for her anxiety, depression and other conditions. *Id*. at 16, citing Tr. at 400. Dr. Kuns' treatment notes showed that on July 22, 2013, he reevaluated her anxiety and depression and Plaintiff denied having any issues, except that she was feeling more irritable because she had run out of her anxiety medication. *Id.* at 400. Her Prozac and Ativan prescriptions were refilled. *Id.* at 402. All of Dr. Kuns' treatment notes except for the one in which she ran out of medications, show that upon examination, Plaintiff presented as oriented, alert, and with a normal affect. *Id*. at 402-451. Notes from December 16, 2010 indicate that Plaintiff reported the Prozac capsules were helping her depression. *Id*. at 451. Plaintiff denied having anxiety or depression symptoms on April 21, 2010. *Id.* at 454.

The Court finds that the ALJ applied the proper legal standards and substantial evidence supports his determination that Plaintiff's mental impairments caused only mild limitations that did not require work-related functional limitations. The burden was on Plaintiff to prove such limitations, and Plaintiff was represented by counsel at the hearing who did not suggest that the record was incomplete, did not request a consultative examination or medical expert, and did not provide any further questioning or elaboration at the hearing as to the mental limitations or findings contrary to the medical records or the ALJ's determination of only mild limitations as to her mental work-related abilities.

### B.    **Plaintiff's Subjective Complaints**

Plaintiff also asserts that the ALJ erred by discrediting her complaints of pain and limitations because he provided an incomplete review of the record and offered irrelevant evidence at times in order to discredit her. ECF Dkt. #17 at 17-20. The Court finds that the ALJ applied the proper legal standards in determining Plaintiff's subjective complaints and substantial evidence supports his decision to discount them.

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529, SSR 96–7p[4]. In order for pain or other subjective complaints to be

---

[4] Effective March 28, 2016, SSR 16-3p superceded SSR 96-7p. *See* SSR 16-3p. SSR 16-3p eliminates the use of the term "credibility" in order to "clarify that subjective symptom evaluation is not an examination of an individual's character. SSR 16-3p. Thus, adjudicators must consider all evidence in a claimant's record in evaluating the intensity

considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir.1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038–1039 (6th Cir.1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96–7p. *See* SSR 96–7p, 61 Fed.Reg. 34483, 34484–34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039–40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey v. Sec'y of Health & Hum. Servs.,* 987 F.2d at 1230, 1234 (6th Cir. 1993).

---

and persistence of symptoms in order to determine how the symptoms limit an individual's ability to perform work-related activities. *Id*. SSR 16-3p emphasizes that in evaluating a claimant's symptoms, the focus is not to determine whether he or she is a truthful person. *Id*.

Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997).

In the instant case, the ALJ cited to the proper standards in evaluating Plaintiff's subjective complaints and limitations. Tr. at 15. He determined that while her medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. *Id.* In so concluding, the ALJ reviewed the appropriate factors, such as Plaintiff's daily activities, her complaints of pain and restrictions, the medications and injections that she received for her pain complaints and their effectiveness, and the opinions of the medical sources in the record. *Id.*

The ALJ cited to Dr. Kuns' longitudinal treatment record, which included the pain medications that Plaintiff was prescribed and her complaints of pain. Tr. at 16, citing Tr. at 400-462. The ALJ explained that these notes showed that many of the visits were for impairments that he found to be non-severe, and those that documented her complaints relating to severe impairments were better suited for review of Dr. Shah's records, since he was the pain management physician to whom Dr. Kuns referred Plaintiff. *Id.* at 17.

The ALJ then reviewed Dr. Shah's pain management records, which showed consistent examinations and treatment by Plaintiff with varying reports of improvement and exacerbation of pain in her spine, knees, ankles, legs and wrists. Tr. at 17-18. The ALJ referred to Plaintiff's two right ankle surgeries, with the last one in 2007, and he noted that the 2007 record failed to show that Plaintiff's right ankle dysfunction affected her gait or required use of an assistive device. *Id.* at 16. The ALJ found that the pain management notes showed that for the most part, Plaintiff's conditions were stable and suggested that she could function well despite her impairments. *Id.* at 18.

Plaintiff takes issue with the ALJ's use of the word "stable" in describing Plaintiff's conditions. ECF Dkt. #19 at 2-3. She asserts that this does not constitute substantial evidence for the ALJ to find that Plaintiff's impairments were not disabling to the extent that she contends. *Id.* at 3. The Court agrees that the ALJ's use of the word "stable" as to Plaintiff's

-13-

conditions is insufficient in meaning and in degree in order to constitute substantial evidence for a decision to discredit her allegations. However, this is not the only reason that the ALJ discounted her complaints of pain and limitations.

The ALJ also cited to many treatment notes showing that Plaintiff was in only mild distress/pain or in no acute distress when she presented for examinations. *Id.* at 18, citing Tr. at 231, 257, 291, 301, 311, 331, 351, 499, 548, 603, 606, 618, 626, 634, 639, 642, 651. The ALJ also noted that the treatment records showed that Plaintiff reported that her medications were effective in reducing her pain and in helping her functional capacity. *Id*. at 18. The ALJ cited to Dr. Shah's notes which showed that on June 12, 2013, Plaintiff reported a continuous improvement in her right ankle pain. *Id.* at 18, citing Tr. at 235. His July 9, 2013 notes indicate that Plaintiff reported a significant amount of improvement in her right knee symptoms, greatly improved back pain, but morepain in her right ankle and left ankle. *Id*. at 240. At her September 9, 2013 visit, Plaintiff reported that her right ankle pain was significantly improved, her right knee pain was much improved, her left ankle pain was substantially better, but her back pain had markedly increased and her left knee pain was not changed. *Id*. at 250. The ALJ also noted that Plaintiff received very conservative treatment for her symptoms and conditions, and he cited to the prescription medications and occasional steroid injections, which she reported provided her temporary relief. *Id*. at 18, citing Tr. at 273-274, 285, 295, 369, 391. Contrary to Plaintiff's assertion, the ALJ did note that Plaintiff was prescribed Opana and Vicodin, an opioid and narcotic pain reliever, as well as anti-inflammatory medications. *Id*. at 16.

The ALJ also reviewed the objective medical evidence of imaging studies to conclude that Plaintiff's conservative medical treatment corresponded to the studies, as the studies did not show severe findings. Tr. at 18. He cited to a July 5, 2012 MRI of Plaintiff's lumbar spine which showed levoscoliosis and mild DDD at L2-L3 and L3-L4, with a slight loss of disc height and disc dessication at L2-L3 and L3-L4 and minimal disc bulging. *Id*. at 18, citing Tr. at 397. The ALJ also noted that throughout Dr. Shah's medical records and treatment, he recommended a moderate level of physical activity, and Plaintiff reported feeling better with more activity,

-14-

including a weight loss program and an exercise program, even with aggravation of her pain due to increased activity. *Id*. at 18, citing Tr. at 299, 304, 309.

In addition, the ALJ cited to Plaintiff's reports that she took a long car ride out of the state, her family was living with her which made her increase her activity, and she was helping to care for her grandchild. Tr. at 18, citing Tr. at 561, 582, 608. The ALJ further cited to Plaintiff's report in July of 2016 that she was "doing good," "she can function," and she was able to "work in the yard." *Id*. at 18, quoting Tr. at 652. He concluded that these reports negated her complaints of debilitating pain and restriction.

Plaintiff argues that the ALJ should have credited the opinion of Mr. Hamlin, her physical therapist, who found that she was only capable of sedentary work. ECF Dkt. #19 at 4. On August 15, 2016, Dr. Shah referred Plaintiff for a functional capacity report with Mr. Hamlin. Tr. at 653. Mr. Hamlin reviewed Plaintiff's medical history, which included two foot and ankle surgeries for pain in 2007 and 2008, which Plaintiff had reported had improved following the surgeries. *Id*. He further noted that Plaintiff reported then having right knee pain in 2009 and was diagnosed with right knee osteoarthritis. *Id*. Mr. Hamlin indicated that a MRI in 2009 showed moderate osteoarthritis of the patellofemoral joint laterally. *Id*. Plaintiff reported to him that she had been receiving injections which had been helping, but she was unable to continue them because she was no longer working. *Id*. He also noted that a 2012 MRI for lower back pain showed mild degenerative changes and a potential disc protrusion. *Id*. Based upon physical effort and pain reliability and disability testing, Mr. Hamlin concluded that Plaintiff gave maximum physical effort during the testing, but her subjective reports of her pain and resulting limitations were not reliable. *Id*. at 658, 661. He ultimately concluded that while Plaintiff's abilities to lift place her in the sedentary to light levels, her limitations in standing for prolonged periods indicate that she could only perform sedentary work. *Id*. at 668.

The ALJ addressed this opinion, along with the opinions of the state agency physicians and psychologists. Tr. at 20. He first noted that Mr. Hamlin was not an acceptable medical

source under SSR 06-03p, in effect at the time[5] and thus he considered his opinion as an "other source." *Id.*, citing 20 C.F.R. §§ 404.1513(a)(d), 416.913(a)(d), and SSR 06-03p. The ALJ also indicated that the evaluation was performed almost three full years after Plaintiff's date last insured. *Id.* In attributing Mr. Hamlin's opinion little weight, the ALJ explained that the medical record did not support it because the opinion relied excessively on Plaintiff's subjective complaints and it was not consistent with the medical record and her activity level as she reported to Dr. Shah. *Id.* The Court finds that the ALJ applied the proper legal standards in evaluating this opinion under SSR 96-3 and his decision is supported by substantial evidence. The ALJ explained that Mr. Hamlin's opinion relied excessively on Plaintiff's subjective complaints. *Id.* at 20. While the Court questions whether the opinion in general "excessively" relied upon Plaintiff's subjective complaints, the part of the opinion recommending that Plaintiff perform sedentary over light work did indeed rely upon Plaintiff's subjective complaints. *Id.* at 668. Mr. Hamlin specifically indicated in the recommendation part of the opinion that while Plaintiff's lifting abilities would place her in the sedentary to light levels of work, he recommended a sedentary level due to the fact that Plaintiff "consistently looked to sit down throughout the test citing lower back, knee and foot pain" which showed an intolerance to standing for a prolonged period of time which precluded her from performing a light level of work. *Id.* The ALJ also noted that the medical records did not support Mr. Hamlin's findings, including the medical opinions of the state reviewing physicians who opined that Plaintiff could perform light work. *Id.* And finally, the ALJ cited to Plaintiff's reports to Dr. Shah that were not consistent with the sedentary work level, which he had documented earlier concerning her reports that she was on an exercise program, she could work in the yard, help care for her grandchild, and had taken a long car drive out of the state. *Id.*

Accordingly, upon review of the ALJ's findings and conclusion to discount Plaintiff's complaints of pain and limitations, and affording great deference to his findings, the Court

---

[5] Effective March 27, 2017, this SSR was rescinded. *See* 82 Fed.Reg. 15263 (3/27/17). It was therefore still effective during the instant claim as the ALJ's decision was rendered on December 13, 2016. ECF Dkt. #14 at 22.

concludes that he applied the proper legal standards in this case and substantial evidence supports his decision to partially discount her complaints of pain and limitations.

## **VI.** **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: March 21, 2019
                            */s/George J. Limbert*
                            GEORGE J. LIMBERT
                            UNITED STATES MAGISTRATE JUDGE